Defendant appeals from a judgment for divorce granted upon plaintiff's petition with allegations of the existence of a common-law marriage. The issue is whether as a matter of law a common-law marriage existed between the parties. We find no such relationship existed and reverse.
The parties entered into a ceremonial marriage in 1970. They lived together as man and wife until shortly before May 6, 1976. On May 5, 1976, they went together to the office of an attorney and signed an agreement of separation which was to be incorporated into a judgment of divorce. Appropriate pleadings for the subsequent securing of the judgment were signed by agreement. After leaving the office of the attorney, the parties repaired to a motel and engaged in sexual relations. Subsequently, they discussed continuing their marriage for the sake of their two children and agreed to withdraw their agreement of separation. Plaintiff returned to the home of her parents and defendant returned to the home of his parents where they spent the night of May 5. The divorce was secured by the attorney on May 6. The parties spent the nights of May 6 and May 7 together at the home of plaintiff's parents, telling the parents they had decided to withdraw the divorce, continue their marriage and rear their children.
On May 8, they returned with the children to the family home. The defendant promised to "stop" the divorce and continue the marriage, but defendant was "too busy." They so resided until the following Saturday when they had an argument and plaintiff returned to the home of her parents with her children. Nothing further was done by either party to "stop" or set aside the divorce, though 30 days since the judgment had not expired.
The parties never again resided together, though plaintiff states that she regularly, until October 1976, met defendant clandestinely at his home or at motels and engaged with him in sexual conversation. She stated that as a result she learned she was pregnant in July, but continued to have sexual relations with defendant until October. In July 1976, defendant began paying $80 support for the children as agreed in the divorce. A child was borne by plaintiff in March 1977. She states that she has not had sexual relations with a man other than defendant and that defendant is the father of the child.
What we have set out above is essentially the testimony most favorable to the wife. It is our opinion that the law when applied to the facts does not permit the finding of a common-law marriage.
To constitute a common-law marriage there must have been an agreement, a mutual understanding, words of assent to presently enter into the marriage relationship. Beck v. Beck, 286 Ala. 692, 246 So.2d 420 (1971). The parties must be then capable in law of making a marriage contract. Beck v. Beck, supra; Turnerv. Turner, 251 Ala. 295, 37 So.2d 186 (1948). There must follow cohabitation as man and wife and a public recognition of the existence of the marriage. Goodman v. McMillan, 258 Ala. 125,61 So.2d 55 (1952).
In this case, by plaintiff's own statements, there was no mutual understanding or assent to enter into a new non-ceremonial common-law relationship, but rather to stop the completion of the pending divorce and to continue the relationship then existing. According to plaintiff, this mutual agreement was made and consummated by sexual intimacy on the afternoon of May 5, *Page 996 
before the divorce was signed on May 6. At that time they were still joined by a ceremonial marriage and could not meet the second requirement of a valid common-law marriage; they were not legally capable of making such a second contract.
Plaintiff said that the statements of defendant during the week of cohabitation subsequent to May 6 were the same as he made on May 5, that is, he was going to "stop" the divorce and they would "continue" as man and wife. There is clearly no evidence of a mutual assent to a new relationship. Turner v.Turner, supra.
The clinching proof of the absence of any agreement of a new relationship is that after plaintiff left the home of defendant on May 15, her relationship, consisting entirely of sexual encounters, was clandestine, secret and opposed to a public recognition of a man and wife relationship. After the divorce was not "stopped" and became final, plaintiff's own conduct negates a public recognition of a marital relationship.
To summarize, the brief re-union, accepting plaintiff's testimony as true, was not in recognition of the ending of a marriage by divorcement and a remarriage by mutual assent and commitment, but was subject to a "stopping" of the divorce and continuation of the existing relationship. When that failed after only one week, plaintiff acquiesced in the divorce as a fait accompli. From that time on, she was only an occasional sexual partner. It may be presumed that it was during this latter relationship that the child was conceived. As unfortunate as it might be, the birth of the child cannot legitimate the liaison from which it came. The trial court erred in applying the law to facts. We must reverse.
REVERSED AND REMANDED.
BRADLEY and HOLMES, JJ., concur.