OPINION OF THE COURT
Louis D. Laurino, J.
Drora Ergon, who alleges she is the surviving spouse of the *421 decedent, Leo Jenkins, has filed a petition asking this court to extend her time to file a right of election on the grounds that at the time of Mr. Jenkin’s death in New York City she was in Israel and was not informed of the fact until some time later. Mr. Jenkins was domiciled in Long Island City.
The executor moves for summary judgment dismissing the petition on the grounds that Ms. Ergon lacks the status of surviving spouse necessary to file a right of election.
Ms. Ergon contends that she and the decedent entered into a common-law marriage in Israel where such a marriage is recognized. In particular she relies on two statutes found in the Succession Law of Israel, to wit:
Israel Succession Law § 55 (1965) reads: "Where a man and woman though not being married to one another, have lived together as husband and wife in a common household, then, upon the death of one of them, neither being then married to another person, the deceased is deemed, subject to any contrary direction expressed or implied in the will of the deceased, to have bequeathed to the survivor what the survivor would have inherited on intestacy if they had been married to one another.”
Section 57 (c) of the same law reads: "Where a man and woman, though not being married to one another, have lived together as husband and wife in a common household, then, upon the death of one of them, neither being then married to another person, the survivor is entitled to maintenance out of the estate as if they had been married to each other.”
Both parties have offered expert opinions by members of the Israeli Bar as to the meaning and effect of the statutes as to the question of whether Ms. Ergon and the decedent were married in the eyes of the Israeli law.
As is not uncommon when experts give their opinions in any contested matter each of these experts reaches a different conclusion as to the effect of the laws. Ms. Ergon’s holding that the Israeli statute permits the parties to enter into a common-law marriage in Israel. The executor’s holding that the statutes do not create a right to enter into a common-law marriage in Israel. Ms. Ergon contends that the differences of opinion expressed by the experts as to the meaning and effect of the Israeli statutes raises a question of fact that requires a trial.
The court does not agree. CPLR 4511 allows the court to take judicial notice, without request of the laws of a foreign *422 nation and where requested by the party mandates the court taking judicial notice of the foreign law where the party requesting it furnishes the court with sufficient information to comply with the request and gives notice to the other parties.
Here, Ms. Ergon set forth the relevant statutes in translation in her petition. The executor admits that the statutes exist and does not question the accuracy of the translation. The meaning and effect to be given to a statute is a question of law and not of fact. "[S]tate courts must routinely construe foreign law in the resolution of controversies properly before them” (Zschernig v Miller, 389 US 429, 442 [concurring opn]).
In addition, while the two experts disagree in their conclusions they do agree on a sufficient number of points to be of aid to the court in determining the matter and to lead the court to "other references and repositories of information” on the subject which are worthy of belief and confidence (People v Langlois, 122 Misc 2d 1018).
The existence and contents of a foreign law become a triable issue of fact when their contents are not set forth in detail, where their existence is disputed or where the accuracy of the translation of the same is raised. (See, Werfel v Zivnostenska Banka, 287 NY 91; Bercholz v Guaranty Trust Co., 179 Misc 778; Rosman v Trans World Airlines, 34 NY2d 385.)
To determine whether the Israeli statutes in question provide for common-law marriage it is first necessary to define marriage as it is held to be in New York. Interestingly, the concept is so basic that there is no definition of the relationship set forth in statute.
However, the courts have defined it as "the civil status of one man and one woman united in law for life under the obligation to discharge to each other and to the community those duties which the community by its laws imposes” (see, 45 NY Jur 2d, Domestic Relations, § 1; Campbell v Crampton, 2 F 417; Frances B. v Mark B., 78 Misc 2d 112).
Common-law marriages were abolished in New York on April 29, 1933. However, common-law marriages entered into in New York prior to that date were and are recognized. So too New York continues to recognize common-law marriages entered into in a jurisdiction where they are valid. Whether a common-law marriage has been entered into will be determined by the laws of the jurisdiction where the marriage was allegedly contracted (Matter of Watts, 31 NY2d 491).
Within the jurisdiction in the United States that recognize *423 common-law marriages is an absolute requirement that the parties must mutually agree or consent to take each other as husband and wife. The agreement must be a present agreement and not an agreement to take one in the future as husband or wife (see, 52 Am Jur 2d, Marriage, § 48).
The agreement must be to enter into the full marital relationship, permanent and exclusive of all others so that when consummated by cohabitation, nothing less than the death of one of the spouses or a decree of divorce pronounced by a court of competent jurisdiction can dissolve the relationship (ibid.).
While cohabitation and the reputation of being husband and wife and the holding out of one another as husband and wife are evidence that the parties did agree to live as husband and wife, they are not substitutes for such an agreement. (See, Graham v Graham, 211 App Div 580.)
In Matter of Pratt (233 App Div 200, 203, appeal dismissed 258 NY 577) the court stated: "Cohabitation between the parties and a mutual acknowledgment on their part that they are man and wife, coupled with a general reputation that they sustain such relation to each other, do not, in and of themselves, constitute a marriage; all this is simply evidence which, if strong enough and not successfully controverted, raises a presumption that the parties are husband and wife, and justifies the trier of the fact in finding that such is the fact.”
The existence of a prior marriage that has not been dissolved by divorce or the death of one of the spouses is a bar to the other spouse entering into a common-law marriage.
So too the entering into a valid common-law marriage which is not dissolved by divorce or death of one of the spouses is a bar to one of the parties entering into a ceremonial marriage with another person. (See, Graham v Graham, supra; Moller v Sommer, 86 Misc 110.) In both situations the later marriage would be void as polygamous.
At this point it might be well to consider the points that both of the experts in Israeli law agree on.
One is that the two statutes are not the only ones in the Israeli code that define the rights of parties who are living together but have not been ceremonially married.
The executor’s expert states the technical term for such a relationship is "known in public” as a marriage or "known in public” as a spouse.
*424 Ms. Ergon’s expert refers to their relationship as a "reputed marriage” or "reputed spouse”, though he admits "known in public” is the literal translation of the words he sets forth as "reputed”.
Both agree that in Matter of Estate of Berger v Margolit (Civ App 818/75 P.D. 30 [2]; P.D. 552 [1976]) the Supreme Court of Israel held that to have rights under Succession Law §§ 55 and 57 the couple must be living together as man and wife in a common household when the death of the one against the estate of whom the claim is made occurs.
The executor’s expert states that in Matter of Nissam v Yustar (621/69, 24 [1] P.D. 617 [1970]) the Supreme Court held that the interpretations given to other "publicly known as the wife” statutes applies to Succession Law §§ 55 and 57.
Ms. Ergon’s expert quotes the opinion in Matter of Nissam v Yustar (supra) as stating "There are only two elements to prove under Section 55, a family life together (cohabitation) and a common household. I agree that these elements must actually exist till the death of the decedent and if one of these elements is shaken prior thereto, even though it had existed previously, Section 55 can not be implemented”.
Commenting on this, Ms. Ergon’s expert contends "Even if Berger and through it Nissam impose a legally valid additional requirement, not stated in the Statute, there is no ruling here that it necessitates physical cohabitation until the date of death, but "that the couple not terminate their relationship between them” (emphasis supplied).
Pinhas Shifman, Senior Lecturer, Faculty of Law at the Hebrew University of Jerusalem, in his article Marriage and Cohabitation in Israeli Law (16 Israel L Rev [No. 4], 439, 441), not referred to by either party, states: "In Israeli Law, 'reputed spouses’ enjoy legal rights by virtue of a long list of laws, but undoubtedly, the legal consequences attached to this relationship are more limited than those relating to marriage according to the law. Legal recognition of marriage is wider and more sweeping”.
At pages 455-456 of the same article speaking of the distinction between a marriage and a "reputed marriage” he states: "And it may be said that the idea underlying this distinction is that cohabitation between a man and woman who have not married may afford the parties certain rights with respect to third parties, but they do not, per se, create mutual rights between the couple themselves. In other words, the legislative *425 protection of reputed couples differs both externally and internally. The cohabitational bond does not obligate the parties, who may terminate it whenever they wish and just as the bond between them is created as a result of cohabitation so it is severed as a result of separation. Only if the common life actually continued until the relevant occurrence, and in particular until the death of one of the partners, it confers certain rights against a third party: these rights derive from the idea that the parties expressed their desire to see themselves as a couple in fact, even though they were not a couple by law.”
To show Israel recognized common-law marriage, Ms. Ergon’s expert relies on a quote from an article entitled, Reflections on a New Law of Succession, by Yadin, in 1 Israel Law Review 132, 140, to the effect that: "It is a significant feature of the new Law that in respect to the conjugal relationship the factual situation of life in a common household’ (sec 55 * * *) is treated as equivalent to a legal tie of marriage.”
However, Mr. Yadin, who was at the time of writing the article, in 1966, Director of Legal Planning at the Israeli Ministry of Justice and a Senior Lecturer of Hebrew University, states and explains at page 138 of the same article:
"Finally, an issue should be mentioned in which the new Law radically departs from religious law and, while it had little to rely upon in terms of foreign legislation, had certain precedents in Israel law. This is the question of the unmarried spouse or, commonly styled in Israel, the reputed wife. In a number of enactments dealing with social insurance and pensions payable from public funds, the reputed wife (or husband) of the person entitled had been put on the same footing as the lawfully married spouse. The same had been done with regard to the statutory protection of tenants, a subject which lies somewhere on the border between social and civil law. In purely private law matters, however, this kind of relationship had not been recognized by the legislature. Neither did the Draft or the Bill of the Succession Law propose to do so. In the parliamentary debates, however, strong demands were made for treating de facto marriage equally with de jure marriage in matters of succession. The main reasons for these demands were (1) certain impediments of marriage preserved from ancient Jewish Law and still prohibitory in a country which has no civil but only religious marriage; (b) the reluctance of certain sections of the population to go through the ceremony of a religious marriage; (c) *426 difficulties in the recognition of certain marriages concluded or dissolved abroad — especially mixed marriages and civil divorces — resulting from the fact that matters of marriage and divorce are in Israel within the exclusive jurisdiction of religious courts.
"The outcome was enactment of sec. 55, cited above, with regard to the presumed will in favour of the unmarried spouse, and the corresponding provision with regard to maintenance from the estate. In a sense this was a compromise. Whereas in the other statutes the reputed spouse had been granted rights irrespective of whether or not either partner was legally married to a third person (though in fact separated from that person), the Law of Succession recognizes the unmarried spouse only where neither partner is 'otherwise’ legally married. A compromise solution was adopted also in terms of legal technique. Instead of including the unmarried spouse in the definition itself of 'spouse’, the provision which in fact confers on that spouse the rights of an heir by law was turned into a 'quasi-will’ — as it is termed in the marginal note to sec. 55 — and the right to maintenance was created by a separate provision to that effect. The 'quasi-will’ operates on the assumption of a presumed intention of the deceased. This device seems to correspond to the way in which certain reforms of Jewish rules of succession and maintenance had been motivated.”
From all of this it is the determination of the court that the relationship referred to in the two statutes in question and the Israeli statutes in general dealing with the relationship of a man and woman who are cohabiting in a common household do not create a state of marriage, equivalent to a common-law marriage or a ceremonial marriage. The parties are not married and are not each other’s spouse. Rather, the statutes confer certain rights in Israel. Some of these rights may be similar to or the same as those of married couples but the conferring of these rights does not in Israel give the parties the status of husband and wife.
Therefore, whatever rights Ms. Ergon may have on the property of the decedent, if any, in Israel, she does not enjoy the status of surviving spouse to file a right of election in New York to take against his will.
The motion for summary judgment dismissing the petition is therefore granted.