522 A.2d 77

In re the **ESTATE OF Ronald A. DODGE, Deceased.**

**Appeal of Tonia K. YODER.**

Superior Court of Pennsylvania.

Argued Nov. 18, 1986.

Filed March 4, 1987.

David B. Keeffe, Sayre, for appellant.

Before WIEAND, MONTEMURO and JOHNSON, JJ.

WIEAND, Judge:

The Register of Wills of Bradford County issued letters of administration in the Estate of Ronald A. Dodge, deceased, to Tonia K. Yoder, whose petition averred that she was the widow of the decedent. Deborah Lynn Martin, the mother and natural guardian of the decedent's son, Ryan Shaw Dodge, filed a petition to revoke the letters which had

been granted to Ms. Yoder. She alleged that Ms. Yoder had never been married to the decedent and had no interest in his estate. Following an evidentiary hearing, the Register of Wills found that a common law marriage existed between Yoder and the decedent and denied the petition to revoke the letters of administration previously issued. Martin then appealed to the Orphans' Court of Bradford County, as permitted by 20 Pa.C.S. § 908(a). The Orphans' Court refused a request for a hearing de novo and limited its review to the record established before the Register of Wills. The court found that the Register of Wills had abused her discretion, that Ms. Yoder's evidence was insufficient to prove a common law marriage, and that the letters of administration should be revoked. Yoder appealed from the order revoking her appointment as administratrix.

The statute commits to the Register of Wills, in the first instance, the duty to issue letters of administration. See: 20 Pa.C.S. § 3155(b). On appeal from the Register's action, where additional evidence is not received, judicial review is confined to a determination of whether the Register abused his or her discretion in the issuance of letters to an administrator. *In re Schulz Estate*, 392 Pa. 117, 123, 139 A.2d 560, 563 (1958). See also: *In re Wertz' Estate*, 6 Pa.D. & C.2d 429 (York 1955). Compare: *In re Padelford's Estate*, 189 Pa. 634, 42 A. 287 (1899) (appeal from Register's grant of letters of administration brought the matter de novo before the orphans' court).

In the instant case, we agree with the Orphans' Court that the Register of Wills abused her discretion when she refused to revoke the letters of administration previously granted to Ms. Yoder. The Orphans' Court concluded that Yoder's evidence was insufficient to prove a common law marriage with the decedent. We do not necessarily disagree with the Orphans' Court's conclusion. Whether Yoder will ultimately be able to prove a common law marriage for purposes of establishing a right to inherit, however, is

not determinative. It is enough for present purposes that the nature of Yoder's claim and the equivocal evidence which she offered in support of a common law marriage suggested most strongly that she was not an appropriate person to administer the decedent's estate.

██ "Our courts have regarded common law marriage as a fruitful source of fraud and perjury and, thus, the law imposes a heavy burden on one who grounds a claim upon the existence of a common law marriage." *In re Cummings Estate,* 330 Pa.Super. 255, 265 n. 3, 479 A.2d 537, 542–543 n. 3 (1984). "This is especially so where the lips of one of the parties to the alleged marriage have been sealed by death...." *Id.,* citing *In re Estate of Gavula,* 490 Pa. 535, 540–541, 417 A.2d 168, 171 (1980); *In re Manfredi Estate,* 399 Pa. 285, 292, 159 A.2d 697, 701 (1960); *In re Osterling's Estate,* 323 Pa. 23, 28, 185 A. 790, 792 (1936). When an attempt is made to establish a marriage without the usual formalities, a court is required to examine the purported marriage contract with great scrutiny. *In re Estate of Gavula, supra; In re Manfredi Estate, supra.*

[3-5] The courts will find a valid common law marriage if there is sufficient evidence to prove that it was the parties' intent to enter a marriage relationship in praesenti. *In re Cummings Estate, supra,* 330 Pa.Super. at 263, 479 A.2d at 541. Constant cohabitation of a man and woman together with a *general* reputation as husband and wife may raise an inference that the parties have contracted a common law marriage. *In re Estate of Garges,* 474 Pa. 237, 241, 378 A.2d 307, 309 (1977); *In re Manfredi Estate, supra,* 399 Pa. at 291, 159 A.2d at 700; *In re Cummings Estate, supra,* 330 Pa.Super. at 263, 479 A.2d at 542. However, an inference of marriage does not arise from cohabitation and reputation where the relationship between a man and a woman was illicit and meretricious at its inception. On the contrary, a relationship which is meretri-

cious at its inception is presumed to continue in like manner during subsequent cohabitation. *In re Stauffer Estate,* 372 Pa. 537, 539, 94 A.2d 726, 727 (1953); *In re Cummings Estate, supra,* 330 Pa.Super. at 264, 479 A.2d at 542; *Commonwealth ex rel. DeMarco v. DeMarco,* 166 Pa.Super. 69, 71, 70 A.2d 384, 386 (1950).

In the instant case, the relationship between Yoder and the decedent was initially meretricious. At that time Yoder was still married to another man. She attempted to show that a change in the meretricious status had occurred following her divorce when, in December, 1982, the decedent offered her a wedding ring. Thereafter, Yoder testified, she and the decedent had referred to themselves as husband and wife. Several other witnesses also said that they had heard the decedent refer to Yoder as his "old lady" and that the two of them were reputed to be husband and wife.

This evidence, however, was sharply contradicted. It was contradicted by hospital records prepared about one month before the decedent's death. Yoder, when admitted for the purpose of giving birth to a son, told hospital personnel that she was unmarried. When, following Dodge's death, the funeral director sought information from the family to be placed on the certificate of death, he was told by a member of the decedent's family in Yoder's presence that the decedent was single. Yoder did not dissent, her only response being that she and the decedent "had lived together at the farm." A death certificate was issued thereafter which recited that the decedent was "never married." Finally, there was evidence that the decedent on various occasions, the last being three days before his death, had told a friend that he and Yoder did not intend to marry.[1]

1. There was also an offer to prove that Yoder had represented herself to be a single woman when she applied for public assistance and that she had never advised the Department of Public Welfare that her status had changed. For reasons which we are unable to comprehend, the Register of Wills refused to receive or consider evidence of admissions made by Yoder in her application for public assistance.

■ One who reviews the record of the hearing before the Register of Wills must of necessity conclude that Yoder's evidence of a civil contract of marriage was inadequate to withstand close judicial scrutiny. Her evidence failed to show either constant cohabitation or a general reputation that she and the decedent had been married. The evidence which she offered, moreover, was sharply contradicted by statements and conduct of Yoder herself. At best, it can be said that her evidence of a common law marriage was inconclusive. Therefore, her claim that she was entitled to receive letters of administration as the widow of the decedent was not clearly established.

■ A determination regarding appellant's right to receive letters of administration will not be res judicata with respect to a claim that she is the decedent's widow for purposes of taking under the intestate laws. *In re Reamer's Estate,* 331 Pa. 117, 200 A. 35 (1938); *In re Boytor's Estate,* 130 Pa.Super. 591, 198 A. 484 (1938). It follows that appellant may, and most likely will, reassert the existence of a common law marriage in support of her claim to a widow's intestate share in the decedent's estate. Such a claim will be adverse and hostile to the interests of other, undisputed heirs of the decedent. The evidence thus far produced, as we have observed, has failed to establish with certainty that appellant, as a result of a common law agreement of marriage, is the widow of the decedent. Under these circumstances, the Orphans' Court could properly conclude that Ms. Yoder was not a proper person to act as administratrix of the decedent's estate. Another person, who does not have a disputed claim against the estate, might better serve in a fiduciary capacity to protect, preserve and administer the decedent's estate for those ultimately determined to be entitled thereto. See: *In re Schulz Estate, supra; In re Rafferty Estate,* 377 Pa. 304, 105 A.2d 147 (1954); *Sharpless' Estate,* 209 Pa. 69, 57 A. 1128 (1904).

Order affirmed.