## JUANITA WILLIAMS COLLIER v.
## CITY OF MILFORD ET AL.
## (13157)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued November 10, 1987—decision released February 9, 1988

*Lorraine W. Osborne,* for the appellant (plaintiff).
*Douglas L. Drayton,* for the appellees (defendants).

CALLAHAN, J. Charles Collier, an employee of the city of Milford, suffered work related injuries when he fell from a truck on April 24, 1978. He died from those injuries on May 3, 1978. It is undisputed that Collier's injuries and death arose out of and in the course of his employment. Subsequent to Collier's death, Fontella

Rudene Williams, the daughter of the decedent and of Juanita Felder Williams, filed a claim for workers' compensation benefits as a presumptive dependent under General Statutes § 31-306 (a) (3).[1] At the time of Collier's death, Fontella was eleven years old, had been supported by Collier, and had been living with Collier and the plaintiff Juanita Williams.[2]

The daughter's claim was uncontested and, after a hearing on January 7, 1980, the workers' compensation commissioner for the third district issued a finding and award ordering compensation to be paid to Fontella Rudene Williams at the rate of $139.83 per

[1] "[General Statutes] Sec. 31-306. DEATH RESULTING FROM ACCIDENT OR OCCUPATIONAL DISEASE. DEPENDENTS. COMPENSATION. (a) The following-described persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee and are referred to hereinafter as presumptive dependents: (1) A wife upon a husband with whom she lives at the time of his injury or from whom she receives support regularly; (2) a husband upon a wife with whom he lives at the time of her injury or from whom he receives support regularly; (3) any child under the age of eighteen years, or over said age but physically or mentally incapacitated from earning, upon the parent with whom he is living or from whom he is receiving support regularly, at the time of the injury of such parent; (4) any unmarried child who has attained the age of eighteen but has not attained the age of twenty-two and who is a full-time student, upon the parent with whom he is living or from whom he is receiving support regularly, provided that any such child who has attained the age of twenty-two while a full-time student but has not completed the requirements for, or received, a degree from a postsecondary educational institution shall be deemed not to have attained such age until the first day of the first month following the end of the quarter or semester in which he is enrolled at such time, or if he is not enrolled in a quarter or semester system, until the first day of the first month following the completion of the course in which he is enrolled or until the first day of the third month beginning after such time, whichever occurs first. In all other cases where there is no presumptive dependent, questions of dependency shall be determined in accordance with the fact, as the fact may be at the time of the injury. Such other dependents are referred to hereinafter as dependents in fact."

[2] The plaintiff was referred to during the course of these proceedings by various names, e.g., Juanita Williams, Juanita Felder Williams, Juanita Williams Collier and Juanita Collier. For the sake of clarity and uniformity the plaintiff will be referred to as Juanita Williams or the plaintiff throughout this opinion.

week commencing May 4, 1978. The commissioner also ordered burial expenses in the amount of $1500 to reimburse Juanita Williams who had paid the funeral bill.

On September 21, 1981, Juanita Williams moved to open the January 7, 1980 order of compensation on the ground that she had an interest superior to that of her daughter in the receipt of any workers' compensation benefits resulting from Collier's death. The commissioner denied the plaintiff's motion to open. The plaintiff thereafter appealed to the compensation review division, pursuant to General Statutes § 31-301 (a).[3] The compensation review division dismissed the plaintiff's

---

[3] "[General Statutes] Sec. 31-301. APPEALS TO COMPENSATION REVIEW DIVISION. PAYMENT OF AWARD DURING PENDENCY OF APPEAL. (a) At any time within ten days after entry of such award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the compensation review division by filing in the office of the commissioner from which such award or such decision on a motion originated an appeal petition and five copies thereof. Such commissioner within three days thereafter shall mail such petition and three copies thereof to the chairman of the compensation review division and a copy thereof to the adverse party or parties. Such appeal shall be heard by a panel of the compensation review division, except that no commissioner may sit in review of an award or decision rendered by him. The compensation review division shall hear the appeal on the record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the division that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the compensation review division may hear additional evidence or testimony. Upon the final determination of the appeal by the compensation review division, but no later than (1) October 1, 1987, for those appeals pending on October 1, 1986, or (2) one year after the date the appeal petition was filed for those petitions filed on or after October 1, 1986, it shall issue its decision, affirming, modifying or reversing the decision of the commissioner. The decision of the compensation review division shall include its findings and award and conclusions of law. When any appeal is pending, and it appears to the compensation review division that any part of the award appealed from is not affected by the issues raised by such appeal, the compensation review division may, on motion or of its own motion, render a judgment directing compliance with any portion of such award not affected by such appeal; or if the only issue raised by such appeal is the amount of the average weekly wage for the purpose of determining the amount of compensation, as provided in section 31-310, the commissioner

appeal and affirmed the commissioner's denial of the plaintiff's motion to open. Thereafter the plaintiff appealed the decision of the compensation review division to the Appellate Court under General Statutes § 31-301b. This court transferred the appeal to itself. See Practice Book § 4023.

The gravamen of the plaintiff's claim, as stated in her brief to this court, is that "she had lived with Charles Collier for sixteen years, that her union with Charles Collier was a valid common law marriage, that she was dependent on him for support, and that under the Workers' Compensation Act she is a presumptive dependent and entitled to compensation."[4] The com-

---

shall, on motion of the claimant, direct the payment of such portion of the compensation payable under his award as is not in dispute, if any, pending final adjudication of the disputed portion thereof. In all appeals in which one of the parties is not represented by counsel, and in which the party taking the appeal does not prosecute the case within a reasonable time from the date of appeal, the compensation review division may, of its own motion, affirm, reverse or modify the award. When an appeal is taken to the compensation review division, the clerk thereof shall notify the commissioner from whose award the appeal was taken, in writing, of any action of the compensation review division thereon and of the final disposition of such appeal, whether by judgment, withdrawal or otherwise, and shall upon the decision of the appeal, furnish the commissioner with a copy of such decision. Whenever any appeal is pending, if it appears to the compensation review division that justice so requires, the compensation review division shall order a certified copy of the evidence for the use of the employer, the employee or both, and such certified copy shall be made a part of the record on such appeal. The procedure in appealing from an award of the compensation commissioner shall be the same as the procedure employed in an appeal from the superior court to the supreme court, where applicable. Acting together as a compensation review division, the commissioners shall adopt regulations in accordance with the provisions of chapter 54 to establish rules, methods of procedure and forms as they deem expedient for the purposes of this chapter, and in which the party taking the appeal does not prosecute the case within a reasonable time from the date of appeal, the compensation review division may, of its own motion, affirm, reverse or modify the award. When an appeal is taken to the compensation review division, the clerk thereof shall notify the commissioner from whose award the appeal was taken, in writing, of any action of the compensation review division thereon and of the final disposition of such appeal, whether by judgment, withdrawal or otherwise, and . . . ."

[4] The plaintiff relied on facts, when she advanced this rationale for her motion to open, which were fully known to her at the time the original claim

missioner and the compensation review division both found that the union of Juanita Williams and Collier did not constitute a common law marriage cognizable under Connecticut law. Therefore, the commissioner held, and the compensation review division affirmed, that "[t]he claims of Juanita Williams do not comply with the provisions of the Workers' Compensation Act and must be denied."

The plaintiff contends that the commissioner and the review division erred when they determined that she was not married to Collier and was, therefore, not entitled to compensation as a presumptive dependent under General Statutes § 31-306 (a) (1). Her argument is premised on the claim that her testimony before the commissioner[5] compelled a finding that she and Collier had contracted a valid common law marriage.

The plaintiff's testimony revealed that she was born Juanita Felder in Alabama on April 20, 1934. On May 7, 1952, she married Luke Williams in Montgomery, Alabama. "[A]bout 1959" Luke Williams left her and their five children in Alabama and moved to Ohio. In the "early 1960s" the plaintiff moved from Alabama, first to Rye, New York, and later to Connecticut. Shortly after moving to Connecticut she met and formed a relationship with Charles Collier. In approximately 1962 she and Collier commenced living together in Bridgeport. Their child, Fontella, was born of their liaison on October 16, 1966. Luke Williams, Juanita Williams' husband, from whom she had never been divorced, died in Cleveland, Ohio, on December 31, 1968.

---

for benefits for her daughter was filed. There is a serious question, therefore, whether the commissioner was required to consider this proposition at all or whether she would have been justified in denying the plaintiff's motion solely on procedural grounds. See General Statutes § 31-315. Our decision to review the substantive basis for the action taken is nonetheless appropriate because both the commissioner and the compensation review division opted to review the merits of the plaintiff's argument.

[5] The transcript of the plaintiff's testimony before the commissioner was the only testimony before the compensation review division.

The plaintiff's testimony also disclosed that, after the death of Luke Williams, she and Collier continued to live together in Bridgeport until Collier's death in 1978. During their years together, both before and after the death of her husband in Ohio, she and Collier took annual vacation trips together of approximately two weeks duration. On these trips, in alternate years, they visited Collier's mother in Orangeburg, South Carolina, and the plaintiff's sister in Montgomery, Alabama. While in South Carolina and Alabama, she and Collier stayed with the family member whom they were visiting. There they slept together, had sexual relations, generally represented themselves as being married to each other, and were generally regarded as married by those with whom they came in contact.[6]

It is the plaintiff's contention that, because of their living arrangements while on vacation, their representations and the perception of their relationship by the community, and the fact that South Carolina and Alabama both recognize common law marriages, she and Collier entered into a valid common law marriage on their trips to those states. She concedes that she never went through a marriage ceremony with Collier anywhere.

In order to qualify as a presumptive dependent under § 31-306 (a) (1), and to have a claim for compensation superior to that of her daughter, the statute requires that the plaintiff be the legal "wife" of the deceased.[7] *Wheat* v. *Red Star Express Lines,* 156

---

[6] The plaintiff testified, however, that on one of their trips to South Carolina Collier informed his mother that he and the plaintiff were not married.

[7] The plaintiff also appears to argue that, even if she were not determined to be legally married to Collier, given the change in sexual mores and the repeal of statutes prohibiting extramarital sexual relations since *Wheat* v. *Red Star Express Lines,* 156 Conn. 245, 240 A.2d 859 (1968), and given the humanitarian purpose of workers' compensation and the liberal construction of the workers' compensation act in favor of the employee, she

Conn. 245, 250, 240 A.2d 859 (1968). Connecticut does not presently recognize, as valid marriages, living arrangements or informal commitments entered into in this state and loosely categorized as common law marriages. *McAnerney* v. *McAnerney,* 165 Conn. 277, 285, 334 A.2d 437 (1973); *Hames* v. *Hames,* 163 Conn. 588, 593, 316 A.2d 379 (1972); *State ex rel. Felson* v. *Allen,* 129 Conn. 427, 432, 29 A.2d 306 (1942). Only recently this rule of law has been reaffirmed. "In this jurisdiction, common law marriages are not accorded validity. . . . The rights and obligations that attend a valid marriage simply do not arise where the parties choose to cohabit outside the marital relationship." (Citations omitted.) *Boland* v. *Catalano,* 202 Conn. 333, 339, 521 A.2d 142 (1987).

In order to have any possible claim for benefits under the workers' compensation act, therefore, the plaintiff must demonstrate that the commissioner and the compensation review division erred when they determined that the periodic sojourns of the plaintiff and Collier to South Carolina and Alabama did not result in a valid common law marriage. Both South Carolina and Alabama recognize as valid common law marriages contracted within those states. *Mattison* v. *Kirk,* 497 So. 2d 120, 122 (Ala. 1986); *Piel* v. *Brown,* 361 So. 2d 90, 93 (Ala. 1978); *Hodges* v. *Nelson,* 370 So. 2d 1020, 1021 (Ala. Civ. App. 1979); *Parker* v. *Parker,* 46 N.C. App. 254, 258, 265 S.E.2d 237 (1980); *Tedder* v. *Tedder,* 109 S.C. 451, 96 S.E. 157 (1917); *Lucken* v. *Wichman,* 5 S.C. 411 (1874).

---

should be entitled to collect benefits as his presumptively dependent wife. The legislature has, however, determined that claimants in the position of this plaintiff can only recover as "dependents in fact." Unlike presumptive dependents, "dependents in fact" receive compensation "according to the relative degree of their dependence." General Statutes § 31-306 (b) (6). In no case can a "dependent in fact" displace the compensation claims of a presumptive defendant like the decedent's daughter. General Statutes § 31-306 (a).

This court has never had the occasion to rule directly on the question of the validity in this state of a common law marriage validly contracted in accordance with the law of another state. The Superior Court in *Delany* v. *Delany,* 35 Conn. Sup. 230, 405 A.2d 91 (1979), however, held that the validity of a marriage is governed by lex loci contractus and recognized the validity of a common law marriage contracted in Rhode Island. See also *Parker* v. *Parker,* 29 Conn. Sup. 41, 43, 270 A.2d 94 (1970). Further, it is the generally accepted rule that a marriage that is valid in the state where contracted is valid everywhere; *Catalano* v. *Catalano,* 148 Conn. 288, 291, 170 A.2d 726 (1961); *Davis* v. *Davis,* 119 Conn. 194, 197–98, 175 A. 574 (1934); *Matter of Jenkins,* 133 Misc. 2d 420, 506 N.Y.S.2d 1009 (N.Y. Sur. 1986); unless for some reason the marriage is contrary to the strong public policy of the state required to rule on its validity. *Catalano* v. *Catalano,* supra, 291–92; *Hager* v. *Hager,* 3 Va. App. 415, 416, 349 S.E.2d 908 (1986).

We are not, however, called upon to decide that question. The commissioner found that it would be "spurious to contemplate under the facts presented that said Juanita Williams and Charles Collier contracted a valid common law marriage in the States of South Carolina and Alabama." The compensation review division also determined that a valid marriage had not been contracted in South Carolina or Alabama.[8] The review division, therefore, affirmed the commissioner's decision that the plaintiff was not entitled to benefits and that the commissioner did not err when she refused to open the compensation award to the plaintiff's daughter.

The existence of a common law marriage is a question of fact. *Byers* v. *Mount Vernon Mills, Inc.,* 268 S.C.

[8] The compensation review division said: "The theory is an ingenious one imaginatively crafted by claimant's counsel. . . . Their relationship was contracted in Connecticut, the state of the parties' domicile and not in Alabama and South Carolina which they visited temporarily."

68, 71, 231 S.E.2d 699 (1977); *Johnson* v. *Johnson,* 235 S.C. 542, 545–46, 112 S.E.2d 647 (1960); *Campbell* v. *Christian,* 235 S.C. 102, 105, 110 S.E.2d 1 (1959). Where the evidence is in conflict, the determination of whether there exists a common law marriage is for the trier. *Mitchell* v. *Smyser,* 236 S.C. 332, 333–34, 114 S.E.2d 226 (1960); *Johnson* v. *Johnson,* supra, 551; *Campbell* v. *Christian,* supra. The findings of the trier of fact "will not be disturbed unless palpably wrong . . . ." *Downs* v. *Newman,* 500 So. 2d 1062, 1063 (Ala. 1986); *Etheridge* v. *Yeager,* 465 So. 2d 378, 380–81 (Ala. 1985); *Skipworth* v. *Skipworth,* 360 So. 2d 975, 977 (Ala. 1978); *King* v. *King,* 114 So. 2d 145, 148 (Ala. 1959); *Baker* v. *Townsend,* 484 So. 2d 1097, 1098 (Ala. Civ. App. 1986); *Luther* v. *M & M Chemical Co.,* 475 So. 2d 191, 193 (Ala. Civ. App. 1985). "It was the commissioner's function to find the facts and determine the credibility of witnesses." *Wheat* v. *Red Star Express Lines,* supra, 249. "We will not review the facts found by the commissioner. Our role is to determine whether the review division's decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." *Aurora* v. *Miami Plumbing & Heating, Inc.,* 6 Conn. App. 45, 47, 502 A.2d 952 (1986).

To constitute a valid common law marriage there must first be a present agreement, that is, a present mutual understanding or a present mutual consent to enter at that time into the marriage relationship. *Piel* v. *Brown,* supra, 93; *Skipworth* v. *Skipworth,* supra, 976; *Goodman* v. *McMillan,* 258 Ala. 125, 129, 61 So. 2d 55 (Ala. 1952), cert. denied, 345 U.S. 929, 73 S. Ct. 789, 97 L. Ed. 1359, reh. denied, 345 U.S. 961, 73 S. Ct. 942, 97 L. Ed. 1381 (1953); *Baker* v. *Townsend,* supra; *Luther* v. *M & M Chemical Co.,*

supra; *Cluxton* v. *Cluxton,* 431 So. 2d 1296, 1298 (Ala. Civ. App. 1983); *Eaton* v. *State,* 423 So. 2d 352, 354 (Ala. Civ. App. 1982); *Walton* v. *Walton,* 409 So. 2d 858, 860 (Ala. Civ. App. 1982); *Golden* v. *Golden,* 360 So. 2d 994, 995–96 (Ala. Civ. App. 1978); *Peacock* v. *Peacock,* 196 Ga. 441, 451–52, 26 S.E.2d 608 (1943); *Johnson* v. *Johnson,* supra, 551; *Campbell* v. *Christian,* supra; 52 Am. Jur. 2d., Marriage § 48. That mutual understanding or consent must be conveyed with such a demonstration of intent and with such clarity on the part of the parties that marriage does not creep up on either of them and catch them unawares. One cannot be married unwittingly or accidentally. *State* v. *Newman,* 66 Mont. 180, 213 P. 805 (1923). The intention of the parties to enter into a marriage contract may be demonstrated by words of present assent; *Golden* v. *Golden,* supra, 995; or may be inferred from facts and circumstances and need not rest exclusively on the declarations of the parties. *Piel* v. *Brown,* supra, 94; *Cluxton* v. *Cluxton,* supra. There must, however, be evidenced a present, mutual, intention to marry. *Piel* v. *Brown,* supra; *Beck* v. *Beck,* 286 Ala. 692, 697, 246 So. 2d 420 (1971); *Howell* v. *Littlefield,* 211 S.C. 462, 465, 46 S.E.2d 47 (1947). An "[i]llicit relationship, though accompanied by cohabitation, is not transformed into a legal state of marriage by the mere lapse of time." *Campbell* v. *Christian,* supra, 109. Moreover, "due to the serious nature of the marriage relationship, the courts will closely scrutinize a claim of common-law marriage and require clear and convincing proof thereof." *Piel* v. *Brown,* supra, 95; *Luther* v. *M & M Chemical Co.,* supra; *Walton* v. *Walton,* supra, 860–61; *In re Estate of Dodge,* 361 Pa. Super. 188, 191, 522 A.2d 77 (1987); *In re Estate of Kovalchick,* 345 Pa. Super. 229, 232, 498 A.2d 374 (1985).

The plaintiff's testimony was the only evidence that was introduced before the commissioner and the compensation review division concerning the relationship that existed between Collier and her.[9] Under the circumstances revealed by her testimony, we cannot say that there was error when the commissioner found, and the compensation review division affirmed, that the plaintiff and Collier had not entered into a valid common law marriage in either South Carolina or Alabama. It cannot be gleaned from the plaintiff's testimony that any contemporaneous agreement was ever entered into or even contemplated in either of those two states to change the status of the relationship of the parties that existed in Connecticut. Further, there is nothing in the plaintiff's testimony to signal a change in the status of her relationship with Collier in Connecticut after the death of her husband in 1968 had removed him as an impediment to her remarriage. See *Steadman* v. *Turner*, 357 Pa. Super. 361, 365, 516 A.2d 21 (1986), appeal denied, 531 A.2d 431 (Pa. 1987); *Byers* v. *Mount Vernon Mills, Inc.*, supra, 71. Therefore, even if, as the plaintiff testified, on their vacation trips to South Carolina and Alabama she and Collier had slept together, had sexual relations and generally held themselves out to be married, a finding that a valid common law marriage was contracted was not required.

The plaintiff's testimony, in fact, is wholly consistent with a finding that, while on vacation in South Carolina and Alabama, the parties simply continued cohabiting without benefit of marriage, as they had at home. As previously indicated, however, cohabitation is not enough to create a valid common law marriage nor is an inten-

---

[9] The only other evidence before the commissioner and the compensation review division was the death certificate of Luke Williams, which was made an exhibit at the hearing before the commissioner.

tion to marry sometime in the future.[10] *Peacock* v.
*Peacock,* supra, 448–49. There must, at a minimum,
have been some evidence of a present contemporaneous
mutual intention to marry, in either South Carolina or
Alabama, when the parties were present in those states,
to give rise to a valid common law marriage. The plain-
tiff's testimony was devoid of any such evidence.

There is no error.

In this opinion the other justices concurred.

---

[10] When asked why she and Collier had never married, the plaintiff replied,
"We kept putting it off, I don't know. Just never got married that's all."