OPINION OF THE COURT
Barbara Howe, J.
Decedent died on October 6, 2003 in Orchard Park, New York. Letters testamentary were issued to respondent, her daughter Amy Susan Woodward, on December 31, 2003. By order to show cause filed December 20, 2004, petitioner, Mackson McDowall, *428 seeks an order from this court enlarging the time within which he may file a right of election as decedent’s alleged surviving spouse to take against her last will and testament. Respondent opposes the application.
Decedent’s will, dated April 14, 2003, leaves her entire estate to be divided equally among her four children. EPTL 5-1.1-A provides a right of election against the estate for a surviving spouse which must generally be exercised within six months from the date letters are issued, although that time may be extended (see, EPTL 5-1.1-A [d]). The principal issue before this court is whether McDowall is, in fact, decedent’s surviving spouse.
McDowall concedes that he and decedent were never formally married. However, he asserts that theirs was a common-law marriage under the laws of the Province of Ontario, Canada, and seeks recognition of his claimed surviving spouse status on that basis.
For the reasons which follow, I conclude that the petition must be dismissed as a matter of law.
“It is well settled that although abolished in New York, ‘a common-law marriage contracted in a sister State will be recognized here as valid if it is valid where contracted’ (Matter of Mott v Duncan Petroleum Trans., 51 NY2d 289, 292 [1980]; see also, Tornese v Tornese, 233 AD2d 316 [1996])” (Matter of Landolfi, 283 AD2d 497, 498 [2001]),
and the rule applies as well to a claimed common-law marriage created in another country (see, e.g., Matter of Jenkins, 133 Misc 2d 420 [1986], and Matter of Huyot, 169 Misc 2d 805 [1996], affd 245 AD2d 513 [1997]). The burden rests upon the party seeking to claim the benefits of a common-law marital relationship to establish that such a relationship exists.
McDowall, an attorney, contends that he is the common-law spouse of decedent under the laws of Ontario, Canada. While there is both statutory and case law authority in Ontario that would recognize certain rights being accorded to a partner in a relationship of a certain duration, there Ts no across-the-board recognition of rights similar to those accorded to spouses of a ceremonial marriage. That difference is critical.
In Walsh v Bona (2002 SCC 83), a case arising in the Province of Nova Scotia, the Supreme Court of Canada recognized that there are valid legal distinctions to be made between the rights of married persons and of those who, as in Walsh, are *429 formally unmarried but who are in an otherwise long-term committed relationship:
“The decision to marry or not is intensely personal and engages a complex interplay of social, political, religious and financial considerations by the individual. While it remains true that unmarried spouses have suffered from historical disadvantage and stereotyping, it simultaneously cannot be ignored that many persons in circumstances similar to those of the parties, that is, opposite sex individuals in conjugal relationships of some permanence, have chosen to avoid the institution of marriage and the legal consequences that flow from it.” (Para 43.)
In going on to address certain perceived inequities in the law as between the two types of relationships, the Walsh majority said:
“Persons unwilling or unable to marry have alternative choices and remedies available to them. The couple may choose to own property jointly and/or to enter into a domestic contract that may be enforced pursuant to the Maintenance and Custody Act, R.S.N.S. 1989, c. 160, s. 52 (1) and the Maintenance Enforcement Act, S.N.S. 1994-95, c. 6, s.2 (e). These couples are also capable of accessing all of the benefits of the MPA [Matrimonial Property Act] through the joint registration of a domestic partnership under the LRA [Law Reform (2000) Act].
“It is true that certain unmarried couples may also choose to organize their relationship as an economic partnership for the period of their cohabitation. Similarly, some couples, without making a public and legally binding commitment, may simply live out their lives together in a manner akin to marriage. In these cases, the law has evolved to protect those persons who may be unfairly disadvantaged as a result of the termination of their relationship.

“Firstly, provincial legislation provides that an unmarried cohabitant or ‘common-law partner’ may apply to a court for an order of maintenance or support: Maintenance and Custody Act, s. 3. The court is empowered to take into consideration a host of factors pertaining to the manner in which the parties organized their relationship as well as the particular needs and circumstances of both of the parties.

“For those couples who have not made arrangements *430 regarding their property at the outset of their relationship, the laui of constructive trust remains available to address inequities that may arise at the time of the dissolution. The law of constructive trust developed as a means of recognizing the contributions, both pecuniary and non-pecuniary, of one spouse to the family assets the title of which was vested wholly in the other spouse: Rathwell v. Rathwell, [1978] 2 S.C.R. 436 (S.C.C.); Becker, supra; Sorochan v Sorochan, [1968] 2 S.C.R. 38 (S.C.C.), Peter, supra. After the enactment of the MPA, the law of constructive trust remained and remains as a recourse for unmarried partners who find themselves unfairly disadvantaged vis-a-vis their former partner. Those situations where the fact of economic interdependence of the couple arises over time are best addressed through the remedies like constructive trust as they are tailored to the parties’ specific situation and grievances. In my view, where the multiplicity of benefits and protections are tailored to the particular needs and circumstances of the individuals, the essential human dignity of unmarried persons is not violated.” (Paras 58-61 [emphasis added].)
Thus, Canada’s highest court has made clear that there is a distinction in law to be made between rights accorded to married couples and to those in a common-law arrangement, and that, as in Walsh, such distinctions of rights dp not per se render those distinctions invalid.
With Walsh as backdrop, I turn to the relevant Ontario statutes. The Succession Law Reform Act (R.S.O., ch S.26 [1990]) governs the distribution of a decedent’s property. Section 1 of the Act defines “spouse” as follows:
“ ‘spouse’ means either of two persons who,
“(a) are married to each other, or
“(b) have together entered into a marriage that is voidable or void, in good faith on the part of the person asserting a right under this Act” (R.S.CX, ch S.26, § 1 [1] [1990]).
This provision does not encompass a common-law spouse in its terms.
*431 Significantly, in part V of the Act, which deals with the support of a decedent’s dependents,* the definition of “spouse” is expanded:
“ ‘spouse’- means a spouse as defined in subsection 1 (1) and in addition includes either of two persons who,
“1. (a) were married to each other by a marriage that was terminated or declared a nullity, or “(b) are not married to each other and have cohabited,
“(i) continuously for a period of not less than three years, or
“(ii) in a relationship of some permanence, if they are the natural or adoptive parents of a child.” (R.S.O., ch S.26, § 57 [1990] [emphasis added].)
As to the Ontario laws governing wills and intestacy contained in parts I and II of the Act, it is the definition of “spouse” in section 1 (1) that applies. While this definition does not include a common-law spouse, as does that for part Y under Walsh v Bona (supra), the distinction would be permissible. And, of more significance to the instant case, the rules governing a right of election, which are found in part I of the Family Law Act (R.S.O., ch F.3, § 6 [1990]), utilize a definition of “spouse” that is the precise counterpart of that contained in the property distribution provisions of the Succession Law Reform Act (see, R.S.O., ch S.26, § 1 [1] [1990]):
“ ‘spouse’ means either of two persons who,
“(a) are married to each other, or
“(b) have together entered into a marriage that is voidable or void, in good faith on the part of a person relying on this clause to assert any right” (R.S.O., ch F.3, § 1 [1] [1990]; 1997 ch 20, § 1; 1999, ch 6, § 25 [1]; 2005, ch 5, § 27 [1], [2]).
Again, there is no reference in this statutory provision to a common-law spouse.
Thus, I conclude that a common-law spouse has no right under the laws of Ontario either to take in intestacy or to elect *432 against the estate where there is a will. I further conclude that such a scheme is permissible under Canadian law.
I return then to New York law. In Matter of Jenkins (supra at 422), the Queens County Surrogate had to determine whether a claimant was decedent’s surviving spouse. Claimant contended that she and decedent had entered into a common-law marriage in Israel. Starting with the premise that marriage as it is defined in New York means
“ ‘the civil status of one man and one woman united in law for life under the obligation to discharge to each other and to the community those duties which the community by its laws imposes’ (see, 45 NY Jur 2d, Domestic Relations, § 1; Campbell v Crampton, 2 F 417 [1880]; Frances B. v Mark B., 78 Misc 2d 112),”
the court, after reviewing applicable Israeli law, found that “the statutes confer certain rights in Israel. Some of these rights may be similar to or the same as those of married couples but the conferring of these rights does not in Israel give the parties the status of husband and wife” (at 426). The court then concluded that “whatever rights Ms. Ergan may have in the property of the decedent, if any, in Israel, she does not enjoy the status of surviving spouse to file a right of election in New York to take against his will” (at 426).
Jenkins was cited with approval by the Appellate Division, Second Department, in Matter of Huyot (245 AD2d 513, 513-514 [1997]):
“The Surrogate properly concluded that there is a distinction between ‘marriage’ and ‘concubinage’ under French law that is ‘more than mere language’. While the petitioner may enjoy some rights under French law as a result of her past relationship with the decedent, and while some of these rights may be similar or the same as those of married persons in France, these rights do not give the parties the status of husband and wife or make the parties the equivalent of husband and wife (see, Matter of Jenkins, 133 Misc 2d 420 [1986]). The parties were not married under French law and were not each other’s spouse. Thus, the petitioner cannot now be deemed a surviving spouse for the purpose of asserting a right of election under New York law (see, EPTL 5-1.1-A).”
Similarly, in this case, there are statutory provisions in Ontario that accord certain rights to parties living in a common- *433 law relationship. Those rights, however, do not make either of the parties the spouse of the other except where there is specific statutory language to that effect. There is no such language in provisions governing property matters upon the death of one of the cohabiting parties, and there is none where a right of election is concerned. Therefore, as in Jenkins and Huyot, the rights accorded to common-law partners under Ontario law “do not give the parties the status of husband and wife or make the parties the equivalent of husband and wife . . . Thus, the petitioner cannot now be deemed a surviving spouse for the purpose of asserting a right of election under New York law (see, EPTL 5-1.1-A)” (Matter of Huyot, supra at 514).
Accordingly, the petition must be, and it hereby is, dismissed in its entirety as a matter of law.

 Section 58 (1) of the Act provides that:
“Where a deceased, whether testate or intestate, has not made adequate provision for the proper support of his dependants or any of them, the court, on application, may order that such provision as it considers adequate be made out of the estate of the deceased for the proper support of the dependents or any of them” (R.S.O., ch S.26, § 58 [1] [1990]).