## 17611

Foster JOHNSON, Administrator with the Will annexed of the Estate of Howard Johnson, Appellant, v. Walker JOHNSON, Beulah Johnson, Clyde Johnson, Laurin Johnson, Rufus Johnson, Lucius Johnson, Lonnie Johnson, Bud Johnson, Aggie Johnson Scott, Rose Lee Johnson Hill, Howard Johnson, Jr., and Grace C. Johnson (so calling herself), of whom Clyde Johnson, Howard Johnson, Jr., and Grace C. Johnson (so calling herself), are Respondents.

(112 S. E. (2d) 647)

Messrs. *William A. Rogers,* of Bennettsville, and *Robinson, McFadden & Dreher,* of Columbia, *for Appellant,* ▮

*Messrs. Goldberg & Cottingham,* of Bennettsville, *for Respondent, Grace C. Johnson,* and *Jack C. Lindsay,* of Bennettsville, and *Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondents, Clyde Johnson* and *Howard Johnson, Jr.,*

February 8, 1960.

OXNER, Justice.

This is an appeal by the administrator *cum testamento annexo* from an order of the Circuit Court holding that the will of the late Howard Johnson was revoked by his subsequent marriage to one Grace Clark.

Appellant contends (1) that the testator and Grace Clark entered into a common-law marriage prior to the execution of the will, and (2) that if not they never subsequently married. Grace Clark (Johnson), the alleged widow of the testator, and his two children, who constitute the respondents on this appeal, deny the existence of any common law marriage prior to the execution of the will and claim that subsequent to its execution, there was a ceremonial marriage between the testator and Grace Clark, which under the terms of Section 19-222 of the 1952 Code revoked the will. The Probate Judge sustained the will. On appeal to the Circuit Court a jury trial was waived and the case heard by the Circuit Judge *de novo*. He sustained respondents' contentions.

Section 19-222 reads as follows: "If any person making a will shall afterwards marry and die leaving his widow or leaving issue of such marriage, unless the will shall have been made in contemplation of marriage expressed on its face and shall contain provision for future wife and children, if any, such marriage shall be deemed and taken to be a revocation of such will to all intents and purposes."

The testator, Howard Johnson, a resident of the Town of McColl, South Carolina, died on November 22, 1955 leaving a will executed on April 10, 1951, in which he bequeathed and devised his entire estate to his son Clyde Johnson, and to his six brothers and two sisters, share and share alike, all of whom survived him and are parties to this action. He appointed his father, Walker Johnson, executor. The father failed to qualify and one of testator's brothers, Foster Johnson, was appointed administrator with the will annexed.

None of the exceptions mentioned in Section 19-222 appear in the will. This being so, any subsequent marriage by the testator would have the effect of revoking it. The trial Judge found that there was no common law marriage between the testator and Grace Clark prior to the execution of the will but that they entered into a ceremonial marriage on April 1, 1955, which was about four years after the will was executed and approximately seven months prior to the death of the testator.

It is conceded under the authority of *Campbell v. Christian,* 235 S. C. 102, 110 S. E. (2d) 1, that the case is at law. We are, therefore, not at liberty to pass on conflicting evidence. Our review of the circuit decree is limited to a determination of whether or not there is any evidence reasonably warranting the factual conclusions reached by the Circuit Judge.

It might be well at the outset to briefly summarize the marital histories of the testator and respondent Grace Clark (Johnson) who now claims to be his widow. For convenience, she will be hereinafter referred to as "Grace". The testator married one Bonnie Yates in 1926. They resided in the Town of McColl until 1934 when she deserted him. They had one child, respondent Clyde Johnson, who was born in 1929. Although there had been no divorce from Bonnie Yates Johnson, the testator purportedly married one Hattie Carpenter in 1948. In August, 1950, Hattie Carpenter obtained a decree annulling this marriage. In September, 1950, the testator obtained a divorce from Bonnie Yates Johnson on the ground of desertion.

Grace's marital history is more extended. She was a party to five ceremonial marriages between 1941 and 1955. The fact that when several of these ceremonies were performed she had a living husband from whom there was no divorce seems not to have disturbed her. The last ceremonial marriage prior to that entered into with the testator on April 1, 1955 was to one Carmen J. Presutto whom she purported-

ly married on January 17, 1955. This marriage to Presutto was invalid as he had a living wife from whom he had not been divorced. The marital history of Grace need not be further pursued. It is sufficent to say that it seems to be conceded by all parties that she became legally capacitated to marry not later than February, 1950 and the testator in September, 1950. It is the contention of appellant that sometime during the fall of 1950 the testator and Grace assumed the common law relation of husband and wife and that this relation existed when the will was executed on April 10, 1951.

Several residents of the Town of McColl testified that during the fall of 1950 and spring of 1951 and for some time thereafter, the testator and Grace lived together as husband and wife; that she was known as Mrs. Howard Johnson and was so introduced by him, and that relation was generally recognized in that community.

One of appellant's witnesses, Dr. Margaret Buckner, a physician in McColl, received a different impression as to the relation between Grace and testator, both of whom were her patients. She said they lived together in the same house in McColl and that sometimes Grace was called "Grace Clark and again Grace Johnson." She further testified:

"Cross Examination by Mr. Lindsay:

"Q. Dr. Buckner, you were Howard's doctor. Is that correct? A. Yes.

"Q. He didn't refer to her as his wife, did he? A. No.

"Q. He did not? A. No.

"Q. You didn't look upon her as his wife, did you? A. I certainly didn't."

Re-direct Examination by Mr. McFadden:

"Q. Now, he has asked you the question, Dr. Buckner, and you stated that Howard Johnson didn't refer to her as his wife. Did he make any statement to you with reference to her being his wife? A. He told me he was not married to her, but she was a good housekeeper and a good cook."

Cohabitation between Grace and testator apparently continued for three or four years. A child, respondent Howard Johnson, Jr., was born on May 7, 1953. The birth certificate states that his father was Howard Johnson. The record discloses four deeds executed by the testator during 1951 and 1952. None of these contained any renunciation of dower. In one of them the grantee was testator's brother, who, it may be fairly assumed, would know whether or not the grantor was married.

Apparently Grace left testator some time prior to January 17, 1955, for the record shows that on that date she was a party to a ceremonial marriage with Presutto, which was performed in Jasper County, South Carolina. The testimony is conflicting as to how long she lived with Presutto. He says that shortly after the marriage they went to Florida, taking Howard Johnson, Jr. with them, but did not live together beyond March, 1955. There is other evidence to the effect that Presutto and Grace were living together as man and wife in Chase City, Virginia, during the fall of 1955.

The probate records of Chesterfield County show that an application for a marriage license was made by Howard Johnson and Grace Clark on March 31, 1955 and they were married on the following day. Appellant contends that the testator was not a party to this ceremony and offered testimony to the effect that the signature of Howard Johnson on the application for the license and his signature on the marriage certificate were not genuine. Respondent offered testimony to the contrary. A Bennettsville attorney testified postively that on March 31, 1955 he took the testator and Grace to Chesterfield where they filed an application for a marriage license. He admitted that testator did not sign his name but said he "touched the pen." He further testified that on the following day he took these parties back to Chesterfield and finding that the Probate Judge's office was closed for lunch, they proceeded to the home of a clerk in that office who performed the marriage ceremony in his

presence. The Clerk testified that she could not identify the parties who were married by her on that date but that she had never performed a marriage ceremony in the presence of this attorney. Dr. Buckner who, as heretofore stated, was testator's family physician, testified that after the above occurrence, the testator told her about going to Chesterfield and remarked: "There ain't nothing to it. I didn't even get out of the car and I didn't sign nothing." Dr. Buckner further testified that the testator told her "that to get the child out of Florida they were going to have to do something, a rig up a marriage certificate."

A judgment roll in the office of the Clerk of Court of Marlboro County discloses that on July 16, 1955 the testator brought an action against Grace and Howard Johnson, Jr. in which he asked that he be permitted to adopt Howard Johnson, Jr. as his own child with full right of inheritance. He alleged in his petition that the child had been living in his home since he was born on May 7, 1953 and that he married Grace on April 1, 1955. A reference was held at which the testator testified: "I married Grace Clark on April 1, 1955 and we had been living together for several years as man and wife before our son was born on May 7, 1953." Grace testified that she married the testator at Chesterfield on April 1, 1955, and further: "I have never been married before, so we were living together as common law man and wife when our son was born on May 7, 1953." She asked the Court to grant the petition for adoption and further stated that she "would also like to have the Court to declare him the legal son of Howard and myself, so that there will be no question as to his being our lawful child." This action resulted in a decree dated August 6, 1955, granting the petition for adoption.

Before concluding our review of the facts, it might not be amiss to state that neither Grace nor any of the brothers and sisters of the testator testified at the trial.

There is considerable discussion in the briefs as to the burden of proof. We shall assume, as appellant contends,

that as to each of the issues presented the burden of proof rests upon respondents.

The first question for determination is whether there is any evidence reasonably supporting the finding of the Circuit Judge that no common law marriage existed between the testator and Grace prior to the execution of the will.

It is essential to a common law marriage that there shall be a mutual agreement between the parties to assume toward each other the relation of husband and wife. Cohabitation without such an agreement does not constitute marriage. As was said in *Lucken v. Wichman*, 5 S. C. 411: "The existence of a marriage is a question of fact. Whether founded on an express contract, or inferred from circumstances, which necessarily imply that the relation of husband and wife existed between the parties the result must be obtained through the medium of the evidence adduced in the cause. If it depends on an express contract, there will be less difficulty in ascertaining the fact, for there the evidence will refer to a particular transaction, and nothing is to be determined but its effect. If, however, it depends on cohabitation and repute, then the effect must be judged by a comparison of all the circumstances relied on by both sides, and even cohabitation and repute will not avail 'where the proof is clear that the parties were never married.'"

There is a sharp conflict in the evidence as to whether the common law relation of husband and wife existed between Grace and the testator when the will was executed. The testimony alone of Dr. Buckner is sufficient to support the conclusion of the Circuit Judge. It is argued that Dr. Buckner, as well as the testator in talking to her, was thinking of a ceremonial rather than actual marriage. But the construction of these statements was for the trier of the facts.

Much emphasis is placed by appellant upon the following statement contained in the circuit decree: "Undoubtedly Howard and Grace lived together at McColl in the apparent

relationship of man and wife for a number of years." Assuming that such a relationship existed at some period, it may have commenced after the execution of the will. It must be remembered that the testator did not become legally capacitated to marry until September, 1950 or about seven or eight months prior to the execution of the will. The question is whether a common law marriage existed during this interval. As pointed out in *Campbell v. Christian, supra,* 235 S. C. 102, 110 S. E. (2d) 1, 5, "It is rarely possible to fix precisely the time at which a common-law marriage may be said to have come into being." In *Rodgers v. Herron,* 226 S. C. 317, 85 S. E. (2d) 104, 113, 48 A. L. R. (2d) 1241, the Court said: "In distinction from the marriage with which we are here concerned, a ceremonial marriage is an event the happening of which can be fixed at some precise time. A common law marriage, on the other hand, depends upon facts and circumstances evidencing a mutual agreement to live together as husband and wife, and not in concubinage. *Tedder v. Tedder,* 108 S. C. 271, 94 S. E. 19, 2 A. L. R. 438. Such facts are often difficult of ascertainment where the intent of the parties has not been formally and publicly declared; and especially difficult is it, in such circumstances, to fix precisely the time at which the common law marriage may be said to have come into being."

Assuming that there once existed a common law marriage between these parties, it was a question of fact as to when it commenced.

The second and final question is whether there is any evidence supporting the conclusion of the trial Judge that the parties were married on April 1, 1955. Both the testimony of the Bennettsville attorney and that of Grace and testator during the adoption proceedings abundantly sustain this conclusion. Assuming as appellant contends, that the testator did not sign the application and marriage certificate, such would not invalidate the marriage. The fact that a marriage is solemnized pursuant to a defective or improperly obtained license or without any license

at all does not affect its validity. Section 20-31 of the 1952 code; *State v. Ward,* 204 S. C. 210, 28 S. E. (2d) 785; Annotation 61 A. L. R. (2d) 847.

Finally, it is contended that if there was a ceremonial marriage on April 1, 1955, it was a "rigged" one and done solely to enable the testator to get Howard Johnson, Jr. back from Florida. But even if the parties entered into this ceremonial marriage for this purpose, with an understanding that after the ceremony was performed they would not live together as man and wife, it is doubtful under some of the authorities whether the validity of the marriage would be affected by such antenuptial agreement. *Campbell v. Moore,* 189 S. C. 497, 1 S. E. (2d) 784; Annotation 14 A. L. R. (2d) 624. Be that as it may, the question of whether the marriage was "rigged" was one of fact for determination by the Circuit Judge. There is abundant testimony sustaining his conclusion that by the ceremony entered into on April 1, 1955, the parties freely and voluntarily assumed the relation of husband and wife.

The circuit decree is affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.