***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner. *Page 2 
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. Jerome Patterson (hereinafter "decedent") sustained a compensable injury on August 30, 2007, when he was burned in a fire at defendant-employer Infinity Treading Systems, Inc. (hereinafter "Infinity Treading"). Decedent died on January 17, 2008, as a direct consequence of his injuries from the fire.
3. On August 30, 2007, and at all times relevant herein, an employee/employer relationship existed between decedent and defendant Gevity/Staff Leasing (hereinafter "Gevity").
4. On August 30, 2007, and at all times relevant herein, an employee/employer relationship existed between decedent and defendant Infinity Treading.
5. Decedent's death on January 17, 2008 was the proximate result of the compensable injury by accident in the course and scope of his employment for both Gevity and Infinity Treading as joint employers.
6. American Home Assurance Co. is the proper carrier on the risk at all times relevant to this claim. *Page 3 
7. Decedent's average weekly wage was $383.63, yielding a weekly compensation rate of $255.77.
8. Plaintiff Quyona Rawley is the natural, adult child of decedent.
9. Temporary total disability benefits in the amount of $255.77 per week were paid by defendants to plaintiff Quyona Rawley for the period August 31, 2007, to February 8, 2008.
10. The parties stipulated the pre-trial agreement into evidence as Stipulated Exhibit 1.
11. The parties stipulated the following Industrial Commission records into evidence, as documents filed with the Commission on the date specified in the file and not as evidence of the matters stated therein, as Stipulated Exhibit 2:
Page Nos. Document
008 Form 18 dated 9/11/07
009 Defendants' Form 60 dated 10/24/07
010 Defendants' Form 19 dated 1/22/08
012 Plaintiff Rawley's Form 33 dated 3/10/08
014 Defendants' Form 29 dated 4/7/08
015 Defendants' Form 33R dated 4/24/08
017 Plaintiff Mosley's Form 33 dated 4/29/08
019 Plaintiff Rawley's Motion to Compel dated 1/18/08
025 Defendants' Motion for Extension of Time to
 Respond to Plaintiff Rawley's Motion to Compel dated
 1/28/08
027 Order granting Extension of Time to Respond to
 Plaintiff's
 Motion for Plaintiff's Motion to Compel by Executive
 Secretary Weaver dated 1/31/08
028 Defendants' Response to Plaintiff Rawley's Motion to
 Compel dated 2/7/08
031 Order Denying Plaintiff Rawley's Motion to Compel by
 Executive Secretary Weaver dated 2/15/08
032 Plaintiff Mosley's Motion for Stay dated 6/5/08
034 Plaintiff Rawley's Opposition to Motion for Stay dated
 6/9/08
037 Defendants' Response to Motion for Stay dated 6/12/08
039 Plaintiff Mosley's Reply to Opposition to Motion for Stay
 dated 6/11/08
042 Defendants' Motion to Add Party dated 6/16/08
045 Order of Addition of Party and Continuance by Deputy
 *Page 4 
 Commissioner Deluca filed 7/10/08
047 Defendants' Motion to Add Kishia Renee Wright as a
 Plaintiff dated 8/4/08
050 Defendants' Motion to Add Shylander Annette Miller as a Plaintiff
 dated 8/4/08
052 Order Continuing Matter by Deputy Commissioner Gillen dated 9/5/08
053 Plaintiff Mosley's Motion for Stay dated 9/23/08
056 Plaintiff Rawley's Brief in Opposition to Barbara Mosley's
 Second Motion for Stay dated 10/3/08
058 Order denying plaintiff Mosley's Motion for Stay by
 Deputy Commissioner Glenn dated 10/9/08
059 Order Adding Kishia Renee Wright and Shylander Annette
 Miller as Plaintiffs dated 10/9/08
060 Plaintiff Rawley's Motion to Compel Discovery dated
 1/5/09
074 Plaintiff Mosley's Response to Motion to Compel
 Discovery dated 1/8/09
076 Order granting Motion to Compel Discovery by Deputy
 Commissioner Glenn dated 1/9/09

12. The parties stipulated the following documents into evidence as Stipulated Exhibit 3:
Page Nos. Document
077 Certificate of Birth for Quyona Rawley
078 Citations and Notifications of Penalties to Infinity
 Treading, N.C. Department of Labor, Division of
 Occupational Safety and Health
086 Informal Settlement Agreement between N.C. Department
 of Labor and Infinity Treading
091 Letters and Order of Appointment of Quyona Rawley as
 Guardian of the Person for Jerome Patterson
094 Letters and Order of Appointment of Quyona Rawley as
 Administrator of the Estate of Jerome Patterson
095 N.C. Division of Motor Vehicle Driving Record for Jerome
 Patterson
096 Death Certificate for Jerome Patterson
097 Professional Services Agreement between defendant
 Gevity and defendant Infinity Treading
117 Plaintiff Mosley's responses to plaintiff Rawley's First Set
 of Interrogatories and Requests for Production of
 Documents
125 Plaintiff Rawley's responses to plaintiff Mosley's First Set
 of Interrogatories
 *Page 5 
130 Defendant Gevity's responses to plaintiff Mosley's First
 Set of Interrogatories
149 Jerome Patterson's 2007 W-2 Forms
151 Plaintiff Mosley's Federal and State Tax Returns for 2004,
 2005 and 2007
167 Saluda County
2007 Vehicle Tax Receipt 168 Check Register for defendant Infinity Treading
175 Car loan documents from Auto Credit of Columbia, S.C.
188 2007 statement from Social Security to Jerome Patterson
192 2007 documents from South Carolina to Jerome Patterson
 regarding food stamps
194 Aiken County police documents concerning 2004 larceny
 charge
196 Jerome Patterson's Federal Tax Returns for 2004, 2005 and
 2006

13. The following exhibits were admitted into evidence at the Deputy Commissioner's hearing:
 a. Plaintiff Rawley's #1, certified copy of Saluda County Sheriff's Office Incident Report of September 26, 2005;
 b. Plaintiff Rawley's #2, certified copy of the Saluda County Sheriff's Office Incident Report of December 20, 2005;
 c. Plaintiff Rawley's #3, certified copy of the Saluda County Sheriff's Office Incident Report of June 1, 2007;
 d. Plaintiff Rawley's #4, certified copy of the Saluda County Sheriff's Office Incident Report of February 7, 2007;
 e. Plaintiff Rawley's #5, certified copy of the Saluda County Sheriff's Office Incident Report of March 15, 2006;
 f. Plaintiff Rawley's #6, notarized petition to the Probate Court of Saluda County seeking appointment of Kishia Wright as Administrator; and
 g. Plaintiff Rawley's #7, July 3, 2008 Affidavit of plaintiff Kishia Wright. *Page 6 
14. The issues to be determined by the Commission are as follows:
 a. Does plaintiff Rawley (hereinafter "Ms. Rawley"), as decedent's adult child, take death benefits as provided under N.C. Gen. Stat. § 97-40?
 b. Can a common law wife under South Carolina law qualify as a widow for purposes of claiming death benefits under N.C. Gen. Stat. § 97-39? If so, was plaintiff Mosley (hereinafter "Ms. Mosley") decedent's common law wife under South Carolina law?
 c. Is plaintiff Wright the natural, adult child of decedent? If so, does plaintiff Wright take death benefits as provided under N.C. Gen. Stat. § 97-40?
 d. Is plaintiff Miller the natural, adult child of decedent? If so, does plaintiff Miller take death benefits as provided under N.C. Gen. Stat. § 97-40?
 ***********
Based upon all the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Decedent sustained an admittedly compensable injury by accident on August 30, 2007, when he was burned in a fire at Infinity Treading. Decedent sustained second and third degree burns to over 60% of his body. He was transported to the burn specialty unit in Chapel Hill, North Carolina, where he subsequently died on January 17, 2008 as a direct consequence of his injuries from the fire.
2. Decedent's death on January 17, 2008 was the proximate result of a compensable injury by accident in the course and scope of his employment for both Gevity and Infinity Treading as joint employers. *Page 7 
3. It is undisputed by the parties that at the time of his death decedent was survived by his daughter, plaintiff Quyona Rawley, who was born of a lawful marriage in the State of North Carolina between decedent and Genetta Watkins, said marriage ending in divorce in 1995.
4. The issues in dispute are whether Ms. Mosley was the common law wife of decedent and, if so, whether she would take death benefits under the Act to the exclusion of all other beneficiaries; and, if not, whether plaintiffs Kishia Wright and Shylander Miller are decedent's illegitimate but acknowledged daughters and therefore would take death benefits as next of kin.
5. Decedent and Ms. Mosley first met while decedent was incarcerated with Ms. Mosley's son. After decedent was released from prison, he and Ms. Mosley lived together sporadically in Ward, South Carolina, from approximately 2002 until 2007. During this period decedent was briefly incarcerated at times and sometimes left the residence for weeks at a time. Decedent had five or six jobs while he lived in South Carolina.
6. Prior to his employment with defendants, decedent moved from South Carolina to Charlotte, North Carolina to live with Ms. Rawley in July 2007. After approximately three weeks, decedent moved to his own residence in Charlotte.
7. After moving to Charlotte, decedent obtained a North Carolina photo identification card from the North Carolina DMV, listing Charlotte as his residence.
8. Throughout his employment with defendants, decedent paid North Carolina income taxes.
9. Decedent's death certificate identifies Charlotte, North Carolina as his place of residence. The death certificate also lists decedent's marital status as divorced. *Page 8 
10. Decedent filed federal tax returns for the years 2004, 2005 and 2006. On each federal tax return, decedent filed as head of household, a single filing status. These federal tax returns do not identify any spouse, including Ms. Mosley. Decedent never filed any joint state or federal tax return with Ms. Mosley, or any federal or state tax return that identified Ms. Mosley as his wife.
11. Ms. Mosley filed federal and South Carolina state tax returns for years 2002 through 2007, in which she did not contend she was the common law wife of decedent. On each federal and state tax return, Ms. Mosley filed as single or head of household, a single filing status. These tax returns do not identify any spouse, including decedent. Ms. Mosley admitted she told her professional tax preparer she was single and never informed the preparer that she was married to decedent or that decedent was her common law spouse. Ms. Mosley never filed a joint state or federal tax return with decedent, or any federal or state tax return that identified decedent as her husband or common law spouse, including the years she contends she and decedent lived as common law husband and wife.
12. Ms. Mosley admitted at the hearing before the Deputy Commissioner that she swore to the accuracy of her federal and state tax returns under the penalty of perjury, and that, between her federal and state tax returns and her testimony in this matter, her federal and state tax returns represented the truth regarding her relationship with decedent.
13. At all times relevant herein, including when Ms. Mosley contends decedent was her common law spouse, Ms. Mosley maintained separate bank accounts in her name only. Ms. Mosley and decedent never held a joint bank account.
14. Ms. Mosley maintained a life insurance policy on herself during the time she contends she was the common law spouse of decedent. The life insurance policy, however, does *Page 9 
not identify decedent as Ms. Mosley's spouse or beneficiary, and lists as sole beneficiary Ms. Mosley's natural daughter.
15. Ms. Mosley maintained a 401K retirement plan through her employer during the time she contends she was the common law spouse of decedent. The retirement plan, however, does not identify decedent as Ms. Mosley's spouse or beneficiary, and lists as sole beneficiary Ms. Mosley's natural daughter.
16. At all times relevant herein, including when Ms. Mosley contends decedent was her common law spouse, Ms. Mosley and decedent owned no real property jointly.
17. In 2006, when Ms. Mosley contends decedent was her common law spouse, Ms. Mosley completed a joint credit application with decedent that asked her to identify her relationship with decedent. Ms. Mosley did not identify decedent as her spouse or common law husband and left the space blank on the credit application. Ms. Mosley admitted she was under an obligation to provide complete and truthful information when she completed the credit application.
18. Ms. Mosley never took decedent's last name and there was never a ceremonial wedding. There is no court order or judicial finding by any South Carolina tribunal that Ms. Mosley and decedent were common law husband and wife, or ever married.
19. In or about July 2004, Ms. Rawley met Ms. Mosley for the first time. Decedent introduced Ms. Mosley as his girlfriend. Ms. Mosley, who was present, did not correct decedent. Thereafter, whenever Ms. Rawley and Ms. Mosley interacted, Ms. Mosley never referred to herself as decedent's wife, common law or otherwise, and never informed Ms. Rawley that she and decedent had married, were planning to marry or agreed to marry. The first time Ms. *Page 10 
Rawley learned that Ms. Mosley claimed to be the common law spouse of decedent is when Ms. Mosley intervened in this action, claiming the death benefit.
20. On or about September 26, 2005, during a time Ms. Mosley contends she was the common law spouse of decedent, Ms. Mosley called a sheriff's deputy from the Saluda County Sheriff's Office to her residence to report a missing handgun she believed was in the possession of decedent. According to the incident report, Ms. Mosley identified decedent as her boyfriend of four years.
21. On or about December 10, 2005, during a time Ms. Mosley contends she was the common law spouse of decedent, Ms. Mosley called a sheriff's deputy from the Saluda County Sheriff's Office to her residence to report a stolen vehicle allegedly taken by decedent. According to the incident report, Ms. Mosley identified decedent as her boyfriend.
22. On or about March 15, 2006, during a time Ms. Mosley contends she was the common law spouse of decedent, Ms. Mosley called a sheriff's deputy from the Saluda County Sheriff's Office to her residence to report decedent had assaulted her and stolen her money. According the incident report, Ms. Mosley identified decedent as her fiancé.
23. On or about February 7, 2007, during the time Ms. Mosley contends she was the common law spouse of decedent and that they were cohabitating uninterrupted as husband and wife, Ms. Mosley called a sheriff's deputy from the Saluda County Sheriff's Office to her residence to report that decedent had broken into her residence. According to the incident report, Ms. Mosley stated that decedent had not lived at the residence for several months and had threatened her with a meat cleaver.
24. On or about June 1, 2007, during a time Ms. Mosley contends she was the common law spouse of decedent, Ms. Mosley called a sheriff's deputy from the Saluda County *Page 11 
Sheriff's Office to her residence to report that decedent had taken her vehicle without her permission. According to the incident report, Ms. Mosley identified herself as decedent's girlfriend.
25. On or about March, 30, 2007, decedent and Ms. Mosley visited Ms. Rawley and her newlywed husband, Charles Rawley. It was the first time Mr. Rawley had met decedent or Ms. Mosley. According to Mr. Rawley, decedent introduced Ms. Mosley as his girlfriend. Ms. Mosley, who was present, did not contradict decedent.
26. During the time decedent lived with Ms. Rawley and her husband, Charles Rawley, in July 2007, decedent and Mr. Rawley spoke daily, and decedent frequently discussed his relationship with Ms. Mosley. In those conversations, decedent referred to Ms. Mosley as his girlfriend and never identified her as his wife or common law spouse. Decedent also stated he would never marry again after his divorce from Genetta Watkins, Ms. Rawley's mother.
27. Decedent maintained contact with his ex-wife, Genetta Watkins, after their divorce in 1995. Decedent discussed with Ms. Watkins his relationship with Ms. Mosley after he began dating Ms. Mosley in or about 2002. In those conversations with Ms. Watkins, decedent identified Ms. Mosley as his girlfriend and never identified her as his wife or common law spouse.
28. Due to his burn injuries, decedent was incapacitated and unable to communicate during his hospitalization at UNC Hospital Burn Center, and remained so until his death on January 17, 2008. Ms. Rawley was appointed guardian of the person for decedent by Order of the Clerk of Superior Court of Mecklenburg County, North Carolina, after a formal hearing. Ms. Mosley did not seek appointment as decedent's guardian, attend the hearing, or otherwise contest *Page 12 
the appointment of Ms. Rawley as decedent's guardian. Nor did Ms. Mosley attempt to direct any of his medical care while he was in the hospital but left that responsibility to Ms. Rawley.
29. After decedent's death, an estate was opened in decedent's name in Mecklenburg County, North Carolina and Ms. Rawley was appointed administrator of the estate by issuance of Letters of Administration by the Clerk of Superior Court of Mecklenburg County, North Carolina. Ms. Mosley did not open or seek to open an estate in South Carolina, where she contended she and decedent resided as common law husband and wife, and never contested the appointment of Ms. Rawley as the administrator of decedent's estate or the opening of an estate for decedent in Mecklenburg County, North Carolina.
30. A funeral for decedent was held on January 24, 2008. Mildred Madden, decedent's aunt, is the family historian and was one of Ms. Mosley's witnesses at the hearing before the Deputy Commissioner. Ms. Madden was asked to prepare a list of the family members that should be included in the obituary notice for decedent. Ms. Madden did not identify Ms. Mosley as decedent's wife but instead identified Ms. Mosley as a "dear friend," even though at the hearing she testified that decedent and Ms. Mosley held themselves out as husband and wife. When asked why she had not written that Ms. Mosley was decedent's wife, Ms. Madden responded "That never even crossed my mind. . . ."
31. On or about May 15, 2008, Ms. Wright completed a notarized form petition to the Probate Court of Saluda County, South Carolina, seeking appointment as administrator of decedent's estate. Ms. Wright, called as witness on behalf of Ms. Mosley, testified at the hearing before the Deputy Commissioner that she considered Ms. Mosley and decedent husband and wife, including at the time she completed the aforementioned petition. Ms. Wright, however, did not identify Ms. Mosley as the wife of decedent or otherwise in the notarized petition, despite the *Page 13 
petition's explicit instructions to identify decedent's marital status and all heirs, including, without limitation, any wife. Ms. Wright did identify Ms. Rawley as decedent's adult child.
32. When Ms. Wright testified that decedent and Ms. Mosley were common law husband and wife in contravention of her sworn statements on the petition, Ms. Wright admitted that she understood she was not entitled to death benefits under the Act and knew if Ms. Mosley prevailed, Ms. Mosley would take the death benefits to the exclusion of Ms. Rawley. Ms. Wright, who had lived with Ms. Mosley for three years, admitted she maintained a close relationship with Ms. Mosley.
33. The Commission gives greater weight to the testimony of Mr. Rawley, Ms. Rawley, and Ms. Watkins, than to the testimony of Ms. Mosley, Ms. Wright and Ms. Mosley's other witnesses. The greater weight of the testimonial evidence and the extensive documentary evidence shows that decedent and Ms. Mosley did not intend to live as husband and wife or to enter into a marriage contract. Therefore, the Commission finds that Ms. Mosley failed to establish the existence of a common law marriage with decedent under South Carolina law.
34. Prior to his death, decedent never acknowledged or legitimated plaintiff Kishia Wright as his natural child, and there is no court order or finding from any tribunal declaring decedent as Ms. Wright's father or ordering decedent to pay child support. Decedent does not appear as the father on Ms. Wright's birth certificate. Decedent did not provide any support, financial or otherwise, during Ms. Wright's minority. There is no DNA or other scientific evidence to establish decedent as Ms. Wright's father.
35. Plaintiff Shylander Miller did not appear at the hearing before the Deputy Commissioner and no evidence was presented on her behalf or in support of her claim to death benefits as the natural, adult child of decedent. *Page 14 
36. At the time of his death decedent was survived by his next of kin, his daughter Quyona Rawley. Decedent was not survived by any person who was either wholly or partially dependent on him for their support.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 17, 2008 decedent sustained a compensable injury by accident arising out of and in the course of his joint employment with defendants. N.C. Gen. Stat. § 97-2(6). Decedent's death proximately resulted from the compensable injury. N.C. Gen. Stat. § 97-38. Therefore, decedent's eligible survivors are entitled to payment by defendants of death benefits pursuant to the Workers' Compensation Act. N.C. Gen. Stat. §§ 97-38, 97-39-40.
2. Common law marriages are invalid in North Carolina.State v. Alford, 298 N.C. 465, 259 S.E.2d 242 (1979);State v. Wilson, 121 N.C. 650, 28 S.E. 416 (1897). Therefore, a person claiming to be a common law wife in North Carolina is not entitled to any part of the compensation payable under the provisions of the Act. Fields v. Hollowell,238 N.C. 614, 78 S.E.2d (1953); Reeves v. Parker-Graham-Sexton,Inc., 199 N.C. 236, 154 S.E. 66 (1930). However, our courts have held that if the relationship between a man and wife is sufficient to constitute a common law marriage that is recognized as valid in other states, such marriage will be given full recognition in this State. Harris v. Harris, 257 N.C. 416, 126 S.E.2d 83 (1962).
3. South Carolina case law recognizes common law marriages where the evidence shows long-term cohabitation and a reputation in the community as husband and wife. Jeanes v. Jeanes,255 S.C. 161, 177 S.E.2d 537 (1970). "Thus, if a party claiming a common-law marriage presents proof of apparently matrimonial cohabitation and long-term social acceptance *Page 15 
of the couple as married, a presumption arises that the couple entered into a common-law marriage, notwithstanding the absence of any proof of an express agreement to enter into a common-law marriage. The presumption, however, in no way lessens the claimant's burden of proving a common-law marriage by the preponderance of the evidence." Barker v. Baker,330 S.C. 361, 368-369, 499 S.E.2d 503, 508 (1998).
4. Under South Carolina law, the existence of a common law marriage is a question of fact to be determined from all attendant circumstances. Johnson v. Johnson,235 S.C. 542, 112 S.E.2d 647 (1960). Cohabitation, in and of itself, is not enough to establish a common law marriage. Johnson v.Johnson, supra; Barker v. Baker, supra. In Barker, for instance, the court held there was no common law marriage when the couple kept their own names, did not file joint tax returns, maintained no joint bank accounts, held no real property jointly, and the plaintiff was not referred to as decedent's husband at the funeral. See also, Cathcart v. Cathcart,307 S.C. 322, 414 S.E.2d 811 (1992) (finding no common law marriage where the evidence showed that the parties did not refer to each other as husband and wife and did not file joint tax returns);Kirby v. Kirby, 270 S.C. 137, 241 S.E.2d 415 (1978) (finding common law marriage where the parties filed joint tax returns, represented themselves as husband and wife, and appeared as husband and wife on their children's birth certificates). Under South Carolina law, "It is essential to a common law marriage that there shall be a mutual agreement between the parties to assume toward each other the relation of husband and wife. Cohabitation without such an agreement does not constitute marriage."Johnson v. Johnson, supra at 550, 112 S.E.2d at 651.
5. Plaintiff Mosley has failed to establish under South Carolina law that she was the common law spouse of decedent. Barker v. Baker, 330 S.C. 361, 499 S.E.2d 503 (1998). *Page 16 
Accordingly, Ms. Mosley is not a widow for purposes of claiming death benefits under N.C. Gen. Stat. § 97-39 and is entitled to no compensation under the Act.
6. Plaintiffs Kishia Wright and Shylander Miller failed to produce competent evidence they were the legitimate children of decedent, or legitimated or acknowledged as the natural children of decedent prior to decedent's death. The North Carolina legitimation and paternity statutes are inoperative after the death of the father. N.C. Gen. Stat. §§ 49-10 through 49-14. Accordingly, plaintiffs Wright and Miller are not next of kin as contemplated by N.C. Gen. Stat. § 97-40 and cannot share in the death benefit payable under the Act.
7. At the time of his death decedent was not survived by any person who was either wholly or partially dependent on him for their support. Therefore, plaintiff Quyona Rawley, the legitimate natural, adult child of decedent, is entitled to the death benefit payable under the Act as next of kin pursuant to N.C. Gen. Stat. § 97-40.
8. If not already done, decedent's estate is entitled to payment by defendants for burial expenses not exceeding $3,500.00 to the person or persons entitled thereto. N.C. Gen. Stat. § 97-40.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Pursuant to N.C. Gen. Stat. § 97-40, plaintiff Quyona Rawley is decedent's sole next of kin and is entitled to the compensation payable under N.C. Gen. Stat. § 97-38 commuted to its present value and paid in a lump sum. *Page 17 
2. An attorney's fee in the amount of 25% of the compensation awarded above is approved for plaintiff Quyona Rawley's counsel. This fee shall be deducted from the compensation awarded to Ms. Rawley and paid directly to her attorney.
3. Defendants shall pay burial expenses not exceeding $3,500.00 to the person or persons entitled thereto, if not already paid by defendants.
4. Defendants shall pay the costs due the Commission.
This ___ day of September 2009.
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER