707 S.E.2d 447

**In re The ESTATE OF Helen P. DUFFY.**

**Robert M. Davitt, Appellant,**

**v.**

**Nancy L. Soeker, Individually, as trustee of the Helen P. Duffy Trust, and Personal Representative of the Estate of Helen P. Duffy; Lynn Y. Kuczik; and Karyn Sherman, Respondents.**

**No. 4801.**

Court of Appeals of South Carolina.

Submitted Jan. 1, 2011.

Decided March 2, 2011.

Stephen Edward Carter, of Hilton Head Island, for Appellant.

Dean Britton Bell, of Hilton Head Island, for Respondents.

WILLIAMS, J.

On appeal, Robert Davitt (Robert) claims he presented satisfactory evidence to establish he was the common law spouse of Helen Duffy (Helen);[1] thus, the circuit court erred in affirming the probate court's determination that Robert was not entitled to an elective share of Helen's estate. We affirm.

## FACTS

Robert and Helen met in 1991 after being introduced by a mutual friend. Both parties were widowed and had children from prior marriages. In 1992, they began cohabiting in New York until they moved to South Carolina in 1998. Upon moving, Helen purchased a home in the Sun City community in Bluffton, South Carolina. Robert lived with Helen in her home until shortly before Helen's death in April 2006. After Helen's death, Robert petitioned for a determination of his status as Helen's surviving spouse and his entitlement to an elective share of her estate.

The probate court held a non-jury trial on June 27, 2007. At trial, Robert presented twelve witnesses from the Sun City community who collectively testified that after moving to South Carolina, Helen and Robert continuously lived together and had a reputation in the community as being married. Robert introduced evidence to corroborate this testimony, including numerous undated Valentine's Day, Father's Day, and birthday cards. Many of these cards referred to Robert as Helen's husband and some explicitly referenced their marriage. Robert also submitted numerous photographs of Helen wearing a ring on her ring finger as well as a copy of their church pictorial directory, which listed the couple as "Bob & Helen Davitt." One of Helen's daughters, Nancy Soeker, testified she heard Helen refer to Robert as her husband to other

---

1. For ease of reference, we refer to the parties by their first names.

people; however, Helen never directly told Nancy that she and Robert were married.

At the one-day trial, Helen's estate presented Helen's last will and testament as well as her second amendment and restatement of trust, which Helen executed in November 2004. The second amendment states,

The Settlor is living with, but is not married to, **ROBERT M. DAVITT,** and has intentionally omitted him from any provisions or distributions to be made hereunder except as may be expressly provided for herein. Settlor's assets were derived from the assets and estates of her [two] prior spouses ... and it is her intent and desire to protect and preserve those assets for the benefit of her three living children....

Helen's attorney, Michael E. Cofield (Cofield), testified he prepared both of those documents based on input from Helen alone. Cofield also stated her three children brought Helen to his office, but none of them were present when Helen signed the second amendment and restatement of trust, and he had no discussion with any of her children about the contents of Helen's will. In addition, the estate introduced a letter written by Robert to his children on July 24, 1999, which stated, "Just for the record[ ]—everything is Helen's—the house, the contents, the car—if I pass on, my estate is the [two] Schwab accounts and a checking account. If Helen goes first—her Will will take care of all...."

Robert testified he and Helen maintained a "house account," into which they deposited both of their social security checks and paid joint living expenses; however, only Helen's name was on the account. Helen also maintained her own personal checking account, and both parties kept their personal assets separate. Robert acknowledged that he and Helen designated their filing status as "single" on their federal income tax returns, despite the option to file as "married filing separately."

In its order, the probate court found Robert was not the common law spouse of Helen. As such, the probate court denied Robert's petition to find he and Helen were lawfully married and consequently declined to award Robert an elective share of Helen's estate. This appeal followed.

## STANDARD OF REVIEW

 The issue of common law marriage sounds in law. *Tarnowski v. Lieberman*, 348 S.C. 616, 619, 560 S.E.2d 438, 440 (Ct.App.2002). Because this action sounds in law, and the existence of a common law marriage is a question of fact, this court is bound by the probate court's factual findings and its credibility determinations. *Barker v. Baker*, 330 S.C. 361, 370, 499 S.E.2d 503, 508 (Ct.App.1998). Consequently, our review in this case is limited to a determination of whether or not there is any evidence to support the findings of the probate court. *Weathers v. Bolt*, 293 S.C. 486, 488, 361 S.E.2d 773, 774 (Ct.App.1987). "[T]he question is not what conclusion this [c]ourt would have reached had it been the fact-finder, but whether the facts as found by the probate court have evidence to support them." *Barker*, 330 S.C. at 370, 499 S.E.2d at 508. Therefore, we must affirm if any evidence supports the probate court's findings. *Tarnowski*, 348 S.C. at 619, 560 S.E.2d at 440.

## LAW/ANALYSIS

 Robert contends the circuit court erred in upholding the probate court's determination that he failed to establish a common law marriage. Specifically, Robert claims the circuit court erred in affirming the probate court because the probate court improperly weighed (1) the testimony of the witnesses in their community, (2) the testimony of Helen's estate attorney, and (3) Robert's and Helen's federal income tax returns. We disagree.

 In South Carolina, a common law marriage is formed when two parties have a present intent to enter into a marriage contract. *Id.*, 348 S.C. at 619, 560 S.E.2d at 440. An express contract is not always necessary as the intent to be married can be inferred from the circumstances. *Kirby v. Kirby*, 270 S.C. 137, 140, 241 S.E.2d 415, 416 (1978). It is essential to a common law marriage that a mutual agreement exists between the parties to assume toward each other the relationship of husband and wife. *Johnson v. Johnson*, 235 S.C. 542, 550, 112 S.E.2d 647, 651 (1960).

■ The party seeking to establish the existence of a common law marriage carries the burden of proof. *Ex parte Blizzard*, 185 S.C. 131, 133, 193 S.E. 633, 634 (1937). Because Robert sought to establish the existence of a common law marriage after Helen's death, section 62–2–802(b)(4) of the South Carolina Code (2009)[2] requires proof by clear and convincing evidence.

Clear and convincing evidence is that "degree of proof which will produce in the [fact-finder] a firm belief as to the allegations sought to be established. Such measure of proof is intermediate, more than a mere preponderance but less than is required for proof beyond a reasonable doubt; it does not mean clear and unequivocal." *Satcher v. Satcher*, 351 S.C. 477, 483, 570 S.E.2d 535, 538 (Ct.App.2002) (internal citation and quotation marks omitted).

In finding Robert failed to establish a common law marriage by clear and convincing evidence, the probate court duly considered the existence of evidence to support a common law marriage, including: (1) numerous celebration cards from Helen to Robert with notations indicating a marital relationship; (2) photographs depicting Helen wearing a ring on her ring finger; and (3) testimony from twelve witnesses in the Sun City community, all testifying that the parties lived together continuously and were regarded in the community as husband and wife.

Despite the foregoing testimony and evidence, the probate court effectively gave more weight to the evidence negating the existence of a common law marriage. The probate court emphasized Helen's last will and testament and her second amendment and restatement of trust that declared she was "living with, but [ ] not married to, Robert M. Davitt," which the court concluded was a clear expression of her state of mind regarding her relationship with Robert. Moreover, the

---

**2.** Section 62–2–802(b)(4) states that a surviving spouse does not include:

[A] person claiming to be a common law spouse who has not been established to be a common law spouse by an adjudication commenced before the death of the decedent or within the later of eight months after the death of the decedent or six months after the initial appointment of a personal representative; if the action is commenced after the death of the decedent, proof must be by clear and convincing evidence.

probate court recounted her attorney's testimony that he witnessed Helen execute those documents and that he prepared the documents based on input only from Helen. The probate court found Robert's letter to his children served to buttress other evidence and testimony at the hearing that both parties intended to keep their assets separate and distinct. Last, the probate court considered the parties' decision to file their federal income taxes as "single" rather than "married filing separately" as evidence Robert and Helen did not intend to be married.

Because the probate court, as the fact-finder, is afforded the discretion to weigh the evidence in probate matters, and there is evidence in the record to support the probate court's decision, we find the circuit court properly affirmed the probate court. *See Barker,* 330 S.C. at 370, 499 S.E.2d at 508 ("[T]he question is not what conclusion this [c]ourt would have reached had it been the fact-finder, but whether the facts as found by the probate court have evidence to support them.").

### CONCLUSION

Based on the foregoing, the circuit court's decision is
**AFFIRMED.**[3]

FEW, C.J., and SHORT, J., concur.

---

3. We decide this case without oral argument pursuant to Rule 215, SCACR.